UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MARY DURAN,                                        :

                 Plaintiff,         :          14 Civ. 4681 (AJP)
                                                              **OPINION AND ORDER**
        -against-                      :

CAROLYN W. COLVIN, Commissioner of      :
Social Security,
                                                   :
              Defendant.        :

                                                   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

         Plaintiff Mary Duran, represented by counsel, brings this action pursuant to § 205(g) of the

Social Security Act, 42 U.S.C. § 405(g), challenging the final decision of the Commissioner of

Social Security denying her Social Security Supplemental Security Income ("SSI") benefits.  (Dkt.

No. 1: Compl.)  Presently before the Court are the parties' cross-motions for judgment on the

pleadings pursuant to Fed. R. Civ. P. 12(c).  (Dkt. No. 21: Comm'r Notice of Motion; Dkt. No. 19:

Duran Notice of Motion.)  The parties have consented to decision of the case by a United States

Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Dkt. No. 14.)

         For the reasons set forth below, the Commissioner's motion for judgment on the

pleadings (Dkt. No. 21) is <u>GRANTED</u> and Duran's motion (Dkt. No. 19) is <u>DENIED</u>.

## FACTS

### Procedural History

         Duran applied for SSI on May 5, 2011, alleging disability since April 1, 2011.  (Dkt.

No. 17: Administrative Record ("R.") 142.)  After the Commissioner denied Duran's application on

initial review (R. 67-72), Duran requested a hearing (R. 73-74).  On April 23, 2012 and January 2, 2013, Duran appeared before ALJ John Noonan.  (R. 36-64.)  On April 18, 2013, ALJ Noonan denied Duran's application, finding that Duran could perform light work.  (R. 14-27.)  On April 30, 2014, the Appeals Council denied Duran's request for review of the ALJ's April 18, 2013 decision. (R. 1-3.)

The period at issue is from April 1, 2011, when Duran alleged she first became disabled, through April 18, 2013, the date of ALJ Noonan's opinion.

**<u>Non-Medical Evidence</u>**

Duran was born on November 23, 1968 and was forty-two years old on the date of her application for benefits.  (R.142.)  Duran graduated high school in the Dominican Republic.  (R. 48, 59.)  Duran only speaks Spanish.  (R. 39.)  Duran was gainfully employed from 1996 until 2011, as an office cleaner, hair washer and flower cutter.  (R. 48, 59, 168, 191-94.)  Duran is separated from her husband and lives with her four children, ranging in age from seven to twenty.  (R. 46-47, 179.)

On May 31, 2011, Duran completed a Disability Function Report.  (R. 179-98.) Duran stated that her conditions do not affect her personal care.  (R. 180.)  Duran prepares food daily.  (R. 181.)  Duran can go out alone and when she does so, she walks and uses public transportation.  (R. 182.)  Duran picks her children up from school.  (<u>Id.</u>)  Duran attends church twice a week and reads the Bible daily.  (R. 184.)  She goes shopping for groceries and clothing once every two weeks.  (R. 183.)  Duran needs help with cleaning, laundry and ironing.  (R. 182.)  Duran claims that back pain affects her ability to lift, sit, climb stairs, kneel and squat.  (R. 184-85.)  Duran claims that she cannot walk "to[o] much."  (R. 185.)  Duran also claims to have headaches every day. (R. 187.)

**Medical Evidence**

    **Dr. Bienvenido Fajardo**

        Duran visited the office of Dr. Bienvenido Fajardo nine times from December 2009 to January 2012.  (See R. 249-326.)  At each visit, Dr. Fajardo conducted a general examination, and the results were unremarkable.  (Id.)

        On December 23, 2009, Duran saw Dr. Fajardo because of lower back pain.  (R. 252.) Dr. Fajardo performed a full physical examination and diagnosed Duran with lower back pain, cervical radiculopathy and hypertension.  (Id.)

        On January 14, 2010, Dr. Fajardo performed a respiratory and cardiovascular exam and diagnosed Duran with hypertension, asthma and lower back pain.  (R. 251.)  Dr. Fajardo prescribed Trilipix with a low fat diet, Symbicort and Singulair.  (Id.)

        On March 16, 2010, Dr. Fajardo performed a musculoskeletal exam and diagnosed Duran with lower back pain, cervical radiculopathy, lumbar radiculopathy and hypertension.  (R. 250.)

        On April 29, 2010, Duran again complained of back pain.  (R. 249.)  Dr. Fajardo again performed a respiratory and cardiovascular exam.  (Id.)  An MRI of Duran's cervical spine showed disc bulges from C4-C6.  (Id.)  An MRI of Duran's lumbar spine showed multiple levels with disc bulges.  (Id.)  Dr. Fajardo again diagnosed Duran with lumbar radiculopathy and hypertension and prescribed Celebrex.  (Id.)

        On September 29, 2010, Duran complained to Dr. Fajardo of generalized pain, bilateral arm pain, knee pain, low back pain and cervical pain.  (R. 261.)  Dr. Fajardo found Duran to be in a general good state of health with no weakness, fatigue or fever, good exercise tolerance, and ability to do usual activities.  (Id.)  Duran had "no muscle or joint pain, no neck/back/shoulder

4

pain, . . . no limitation in motion."  (R. 262.)  Dr. Fajardo diagnosed Duran with hypertension, cervicalgia,[1] tendinitis,[2] pain in the upper and lower limbs, knee pain and asthma.  (R. 262.)  Dr. Fajardo prescribed Meloxicam and Enalapril, and counseling on diet and exercise as preventative medication.  (R. 263.)  Dr. Fajardo referred Duran to neurologist Dr. Casilda Balmaceda for a follow up concerning her tendinitis and cervicalgia.  (R. 263.)

On February 3, 2011, physician's assistant Altagracia Navarro examined Duran and diagnosed her with hypertension and asthma.  (R. 324-28.)  She noted that Duran had good exercise tolerance and "was able to do usual activities," and had "no limitation in motion."  (R. 324-25.)

On July 21, 2011, P.A. Navarro examined Duran and diagnosed her with hypertension, asthma, vertigo and lower back pain.  (R. 321-23.)

On September 1, 2011, P.A. Navarro examined Duran and diagnosed hypertension, asthma, vertigo and lower back pain.  (R. 319-20.)  P.A. Navarro prescribed ibuprofen for Duran's lower back pain.  (R. 320.)

On January 23, 2012, Dr. Fajardo examined Duran and diagnosed hypertension, lumbar radiculopathy, cervical radiculitis[3] and asthma.  (R. 315-18.)  Dr. Fajardo referred Duran to Broadway Family Physical Therapy for her lumbar radiculopathy and cervical radiculitis.  (R. 318.)  As preventative medicine, Dr. Fajardo prescribed counseling on diet and exercise.  (Id.)

---

[1]     Algia is "a word termination denoting a painful condition."  Dorland's Illustrated Medical Dictionary at 48 (32d ed. 2012).

[2]     Tendinitis is "inflammation of tendons and of tendon muscle attachments."  Dorland's Illustrated Medical Dictionary at 1881.

[3]     Radiculitis is "inflamation of the root of a spinal nerve, especially that portion of the root which lies between the spinal cord and the invertebral canal."  Dorland's Illustrated Medical Dictionary at 1571.

**Dr. Casilda Balmaceda**

Duran visited the office of Dr. Casilda Balmaceda approximately eleven times from February 2011 to March 2012.  (R. 271-392.)  Dr. Balmaceda performed general and neurological exams, the results of which were largely unremarkable.  (Id.)

On February 28, 2011, an MRI of Duran's cervical spine showed a cerebral tonsillar protrusion though the foramen magnum,[4/] disc desiccation, a broad-based disc bulge, a broad-based spondylitic[5/] ridge bulging disc complex and a central disc bulge.  (R. 271.)  A non-contrast MRI of Duran's brain showed a cerebellar tonsillar protrusion through the foramen magnum compatible with Chiari 1 malformation.[6/]  (R. 272.)  The malformation was "without significant change" from an April 2010 MRI. (R. 271-72.)

On March 26, 2011, Duran complained of dizziness and pain.  (R. 369.)  Dr. Balmaceda diagnosed cervicalgia and a lumbar strain and sprain.  (Id.)  Dr. Balmaceda prescribed Pennsaid and Savella to treat the cervicalgia.  (R. 370.)

On May 26, 2011, an MRI of Duran's brain showed herniation of the cerebellar tonsils, crowding the cervicomedullary junction, with no changes since the February 2011 MRI.  (R. 273.)

---

[4/]    Foramen magnum is "the large opening in the anterior and inferior part of the occipital bone, interconnecting the vertebral canal and the cranial cavity."  Dorland's Illustrated Medical Dictionary at 729.

[5/]    Spondylitic is "inflammation of the vertebrae."  Dorland's Illustrated Medical Dictionary at 1754.

[6/]    Chiari malformation is "a congenital anomaly in which the cerebelum and medulla oblongata, which is elongated and flattened, protrude into the spinal canal through the foramen magnum."  Dorland's Illustrated Medical Dictionary at 1098. "[T]ype 1 involves prolapse of the cerebellar tonsils into the spinal canal without elongation of the brainstem." Id.

On June 14, 2011, Duran complained of severe dizziness, neck pain and spasms. (R. 371.) Dr. Balmaceda performed a general examination that showed no abnormalities. (Id.) Dr. Balmaceda again diagnosed Duran with cervicalgia and lumbar sprain and strain. (Id.)

On October 10, 2011, Dr. Balmaceda completed a medical source statement about Duran. (R. 287-93.) Dr. Balmaceda opined that due to back pain, Duran could only lift and carry up to ten pounds occasionally, sit for a total of one hour during an eight-hour workday and stand and walk for a total of less than one hour during an eight-hour workday. (R. 287-88.) Dr. Balmaceda stated that Duran's "pain is severe[,] constant and worse at the end of [the] day, worsened by any movements." (R. 288.) Dr. Balmaceda further opined that "[s]pasms in [Duran's] neck limit the repetitive movements of [her] arms and hands." (R. 289.) Dr. Balmaceda also opined that Duran could not tolerate poor environmental conditions such as dust and fumes. (R. 291.)

In November 2011, Duran saw neurosurgeon Dr. Angevine at Dr. Balmaceda's request. (See R. 382.) Dr. Angevine concluded that Duran had "no need for lumbar surgery." (Id.)

On November 17, 2011, Duran saw Dr. Balmaceda and exhibited "more posterior fossa[7/] signs, and some slurred speech." (R. 382.)

On December 22, 2011, Duran complained of severe neck pain and parasthesis down the arms. (R. 381.) Duran stated that she felt her arms and hands were less strong and that she dropped things once in a while. (Id.) Duran stated that she had also developed a new headache pain that lasted for hours. (Id.) General and neurological examinations showed no abnormalities. (R. 381-82.) Dr. Balmaceda prescribed an MRI of the cervical spine because of new deficits of the hands and also counseling on exercise and health as preventative medicine. (R. 382.)

---

[7/]    A fossa is "a trench, channel, or hollow place." Dorland's Illustrated Medical Dictionary at 736.

On January 26, 2012, Dr. Balmaceda performed motor nerve and conduction studies on Duran that "revealed normal distal latencies and conduction velocities of bilateral tibial and peroneal nerves." (R. 392.) "Sensory nerve conduction studies revealed normal peak latencies and amplitudes for bilateral sural nerves" and "H-reflex[8] studies were within the normal range." (R. 392.) The electrodiagnostic study of both lower limbs was normal. (Id.) There was "no electrodiagnostic evidence of lumbar radiculopathy or generalized peripheral neuropathy." (R. 392.)

On June 25, 2012, an x-ray of Duran's thoracic[9] spine showed "degenerative narrowing of the T4-T5 through T12-L1 disc spaces," "mild kyphosis,"[10] and "calcification of the discs." (R. 383.) The results showed "no significant change since [the] March 19, 2010 exam." (Id.)

On August 26, 2012, Duran had a lumbar spine MRI. (R. 384.) The results showed an "L3-L4 broad-based disc bulge flattens the thecal sac," an "L4-L5 disc protrusion flattens the thecal sac," and a "previously seen extruded fragment [at the L3-L4 level] is no longer demonstrated." (Id.) Compared to the March 2010 MRI "the findings at L3-L4 appeared less pronounced." (Id.)

On November 21, 2012, Duran had another brain MRI which diagnosed a "Chiari 1 malformation with cerebellar tonsils extending two cm inferior to the foramen magnum." (R. 385.) The "remainder of the examination [was] unremarkable." (Id.) There was no change from the May

---

[8]   H-reflex is "a monosynaptic reflex elicited by stimulating a nerve, particularly the tibial nerve, with electric shock." Dorland's Illustrated Medical Dictionary at 1612.

[9]   Thoracic means "pertaining to or affecting the thorax (chest)." Dorland's Illustrated Medical Dictionary at 1920.

[10]   Kyphosis is "abnormally increased convexity in the curvature of the thoracic vertebral column as viewed from the side." Dorland's Illustrated Medical Dictionary at 992.

8

2011 brain MRI.  (Id.)  An MRI of Duran's cervical spine found a "Chiari 1 malformation," "C5-C6 broad-based posterior disc herniation[,] bilateral foraminal stenosis,"[11/] and a "C3-C4, C4-C5, C6-C7, and C7-T1 posterior disc bulge."  (R. 386.)  There was no change from the February 2012 MRI.  (R. 386.)

### Dr. Franz Goyzueta

On March 22, 2012, Dr. Franz Goyzueta performed a physical examination that found Duran in "no acute distress."  (R. 307.)  Musculoskeletal and back exams were normal.  (R. 308.) Dr. Goyzueta diagnosed Duran with anemia, hypertension syringomyelia[12/] and low back pain.  (R. 309, 311.)

## Consultative Examinations

### Dr. Gerald Galst

On June 25, 2012, state medical expert Dr. Gerald Galst reviewed Duran's medical records and assessed her condition.  (R. 343-52.)  Dr. Galst noted that Duran complained of disabling neck and lower back pain, asthma, hypertension and headaches.  (R. 343.)  Dr. Galst opined that although Duran claimed to have hypertension, her last ten blood pressure readings were "well within the normal range."  (Id.)  Dr. Galst found that there was "no demonstrated treatment for . . . asthma."  (R. 344.)  Dr. Galst stated that x-rays of Duran's spine "are normal."  (Id.)  Dr. Galst further found an MRI did "confirm an Arnold-Chiari (type I) deformity, which is often

---

[11/]   A foramen is a "natural opening or passage, especially one into or through a bone." Dorland's Illustrated Medical Dictionary at 729.  Stenosis is "an abnormal narrowing of a duct or canal."  Id. at 1769.

[12/]   Syringomyelia is "a slowly progressive syndrome of cavitation in the central segments of the spinal cord, generally in the cervical region, but sometimes extending up into the medulla oblongata . . . or down into the thoracic region."  Dorland's Illustrated Medical Dictionary at 1858.

asymptomatic."  (Id.)  Dr. Galst concluded that Duran's impairments do not meet or equal any impairment listed in Appendix 1 of the regulations.  (R. 345.)  Dr. Galst opined that Duran needed a clean work environment because of her claimed asthma and that she had "[s]ome mild restrictions on: pushing/pulling and frequent overhead reaching."  (R. 346.)  Dr. Galst found that Duran had no other limitations in the workplace that result from her impairments.  (Id.)  Dr. Galst opined that Duran could sit for eight hours and stand for four hours in an eight hour workday.  (R. 348.)

### Dr. William Lathan

On June 20, 2011,  consultative physician Dr. William Lathan examined Duran.  (R. 275-77.)  Dr. Lathan opined that Duran appeared to be in no acute distress with a normal gait and stance.  (R. 276.)  Duran needed no help getting on and off exam table.  (Id.)  Dr. Lathan found no musculoskeletal problems, motor or sensory deficits.  (R. 277.)  Dr. Lathan found that Duran had a moderate restriction for bending, lifting, pushing, pulling, squatting, standing and walking.  (R. 278.)  Dr. Lathan also recommended that Duran "avoid smoke, dust, and noxious fumes."  (Id.)

### Dr. Merilee Mescon

On November 5, 2012, Dr. Merilee Mescon performed a consultative neurologic examination of Duran.  (R. 358.)  Dr. Mescon diagnosed an Arnold-chiari malformation since birth and a history of asthma and high blood pressure under good medical management.  (R. 355, 357.)  Dr. Mescon found that Duran was in no acute distress, had a normal gait with no muscle atrophy and normal muscoloskeletal results.  (R. 356-57.)  Dr. Mescon found that "on the basis of the examination, there are no limitations in [Duran's] ability to sit or stand, but her capacity to climb, push, pull, or carry heavy objects would probably be moderately limited by neck and shoulder pain as a result of this condition."  (R. 357-58.)  Furthermore, "since [Duran] does have a history of asthma, environments with toxic dust, chemicals, or fumes are not recommended for" Duran.  (R.

358.)

**ALJ Noonan's Decision**

On April 18, 2013, ALJ Noonan denied Duran's application for benefits. (R. 14-27.) ALJ Noonan applied the appropriate five step-legal analysis. (R. 22.) At step one, ALJ Noonan found that Duran had "not engaged in substantial gainful activity since April 1, 2011, the alleged onset date." (Id.) At step two, ALJ Noonan found that Duran had four "severe impairments: Arnold-Chiari malformation; disorder of the cervical spine; hypertension; and asthma." (Id.)

At step three, ALJ Noonan found that Duran "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (R. 22.) ALJ Noonan "adopt[ed] the opinion of Medical Expert Gerald Galst, M.D., . . . that [Duran's] impairments do not meet or equal a medical listing." (R. 23.) "[B]ecause there is no evidence that her back condition satisfies the requirements of 1.04 A through C, pertaining to spinal disorders with nerve root compression, spinal arachnoiditis, and lumbar spinal stenosis, respectively, [Duran's] severe back condition does not meet Listing 1.04." (R. 23.) ALJ Noonan further found "there is no evidence that her hypertension satisfies the requirements of any of the cardiovascular listings." (Id.) As to Duran's asthma, ALJ Noonan found that

> the evidence of record does not support a finding that her asthma is severe to the extent required by [Listing] 3.03. Specifically, the record does not indicate that [Duran] experiences asthma-related attacks requiring treatment of a sufficient frequency and duration to satisfy the requirements of 3.03.

(R. 23.)

ALJ Noonan determined that Duran "has the residual functional capacity to perform light work . . . not requiring exposure to dusts, fumes, or other pulmonary irritants." (Id.) In assessing Duran's credibility, ALJ Noonan found Duran's "statements concerning the intensity,

persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 24.) ALJ Noonan reasoned that "although the medical evidence of record confirms that [Duran] has the above severe impairments, there is no evidence that they render her unable to perform the demands of a wide range of exertionally light work." (Id.) ALJ Noonan based his determination on the opinion of Dr. Galst, which the ALJ found is consistent with "the overall pattern of medical evidence in the record [that] supports a finding that [Duran's] impairments are not physically disabling." (Id.) Dr. Galst found that Duran could "frequently lift and carry up to ten pounds, sit for a total of eight-hours during an eight-hour workday, stand for a total of four hours during an eight-hour workday, and walk for a total of three hours during an eight-hour workday." (Id.) "Dr. Galst also found that [Duran] has 'some mild limitation' [to] pushing, pulling and frequent overhead lifting; and that she has no limitation for fingering or handling." (Id.) ALJ Noonan also relied on Dr. Lathan's similar finding that Duran's "severe impairments do not render her unable to work" (R. 24), and that she "has only 'moderate' restriction for bending, lifting, pushing, pulling, squatting, and walking" (R. 24-25). ALJ Noonan also relied on consultative physician Dr. Mescon's finding that Duran has only moderate limitations on "her ability to climb, push, pull, or carry heavy objects." (R. 25.) Lastly, ALJ Noonan gave "little weight to Dr. Balmaceda's [October 10, 2011 Function Capacity Report] assessment since it is contrary to the weight of the evidence, including her only treatment notes, indicating no such functional limitations." (R. 25.)

At step four, ALJ Noonan concluded that Duran was "unable to perform any past relevant work." (R. 25-26.)

At step five, ALJ Noonan concluded that "considering [Duran's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

national economy that [Duran] can perform."  (R. 26.)

Therefore, ALJ Noonan determined that Duran "has not been under a disability as defined by the Social Security Act from April 1, 2011."  (Id.)  The Appeals Council upheld that determination.  (R. 1-3.)

## ANALYSIS

## I.   THE APPLICABLE LAW

### A.   Definition Of Disability

A person is considered disabled for Social Security benefits purposes when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); see, e.g., Barnhart v. Thomas, 540 U.S. 20, 23, 124 S. Ct. 376, 379 (2003); Barnhart v. Walton, 535 U.S. 212, 214, 122 S. Ct. 1265, 1268 (2002); Impala v. Astrue, 477 F. App'x 856, 857 (2d Cir. 2012).[13]/

> An individual shall be determined to be under a disability only if [the combined effects of] his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

---

[13]/   See also, e.g., Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 111 (2d Cir. 2010); Betances v. Comm'r of Soc. Sec., 206 F. App'x 25, 26 (2d Cir. 2006); Surgeon v. Comm'r of Soc. Sec., 190 F. App'x 37, 39 (2d Cir. 2006); Rodriguez v. Barnhart, 163 F. App'x 15, 16 (2d Cir. 2005); Malone v. Barnhart, 132 F. App'x 940, 941 (2d Cir. 2005); Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004), amended on other grounds, 416 F.3d 101 (2d Cir. 2005); Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999); Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996).

immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see, e.g., Barnhart v. Thomas, 540 U.S. at 23, 124 S. Ct. at 379; Barnhart v. Walton, 535 U.S. at 218, 122 S. Ct. at 1270.[14/]

      In determining whether an individual is disabled for disability benefit purposes, the Commissioner must consider: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam).[15/]

**B.**    **Standard Of Review**

      A court's review of the Commissioner's final decision is limited to determining whether there is "substantial evidence" in the record as a whole to support such determination. E.g., 42 U.S.C. § 405(g); Giunta v. Comm'r of Soc. Sec., 440 F. App'x 53, 53 (2d Cir. 2011).[16/]"" Thus,

---

[14/]     See also, e.g., Salmini v. Comm'r of Soc. Sec., 371 F. App'x at 111; Betances v. Comm'r of Soc. Sec., 206 F. App'x at 26; Butts v. Barnhart, 388 F.3d at 383; Draegert v. Barnhart, 311 F.3d at 472; Shaw v. Chater, 221 F.3d at 131-32; Rosa v. Callahan, 168 F.3d at 77; Balsamo v. Chater, 142 F.3d at 79.

[15/]     See, e.g., Brunson v. Callahan, No. 98-6229, 199 F.3d 1321 (table), 1999 WL 1012761 at *1 (2d Cir. Oct. 14, 1999); Brown v. Apfel, 174 F.3d at 62.

[16/]     See also, e.g., Prince v. Astrue, 514 F. App'x 18, 19 (2d Cir. 2013); Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 111 (2d Cir. 2010); Acierno v. Barnhart, 475 F.3d 77, 80-81 (2d Cir.), cert. denied, 551 U.S. 1132, 127 S. Ct. 2981 (2007); Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004); Jasinski v. Barnhart, 341 F.3d 182, 184 (2d Cir. 2003); Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); Brown v. Apfel, 174 F.3d 59, 61 (2d Cir. 1999); Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991); Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam); Dumas v. Schweiker, 712 F.2d 1545, 1550 (2d Cir. 1983).

the role of the district court is quite limited and substantial deference is to be afforded the Commissioner's decision.'" Morris v. Barnhart, 02 Civ. 0377, 2002 WL 1733804 at *4 (S.D.N.Y. July 26, 2002) (Peck, M.J.).[17]

The Supreme Court has defined "substantial evidence" as "'more than a mere scintilla [and] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971); accord, e.g., Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013); Rosa v. Callahan, 168 F.3d at 77; Tejada v. Apfel, 167 F.3d at 773-74.[18] "[F]actual issues need not have been resolved by the [Commissioner] in accordance with what we conceive to be the preponderance of the evidence." Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), cert. denied, 459 U.S. 1212, 103 S. Ct. 1207 (1983). The Court must be careful not to "'substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review.'" Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991).[19]

The Court, however, will not defer to the Commissioner's determination if it is "'the product of legal error.'" E.g., Duvergel v. Apfel, 99 Civ. 4614, 2000 WL 328593 at *7 (S.D.N.Y. Mar. 29, 2000) (Peck, M.J.); see also, e.g., Douglass v. Astrue, 496 F. App'x 154, 156 (2d Cir.

---

[17]   See also, e.g., Florencio v. Apfel, 98 Civ. 7248, 1999 WL 1129067 at *5 (S.D.N.Y. Dec. 9, 1999) (Chin, D.J.) ("The Commissioner's decision is to be afforded considerable deference; the reviewing court should not substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a de novo review." (quotations & alterations omitted)).

[18]   See also, e.g., Halloran v. Barnhart, 362 F.3d at 31; Jasinski v. Barnhart, 341 F.3d at 184; Veino v. Barnhart, 312 F.3d at 586; Shaw v. Chater, 221 F.3d at 131; Brown v. Apfel, 174 F.3d at 61; Perez v. Chater, 77 F.3d at 46.

[19]   See also, e.g., Campbell v. Astrue, 465 F. App'x 4, 6 (2d Cir. 2012); Veino v. Barnhart, 312 F.3d at 586.

2012); Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004), amended on other grounds, 416 F.3d 101

(2d Cir. 2005); Tejada v. Apfel, 167 F.3d at 773 (citing cases).

      The Commissioner's regulations set forth a five-step sequence to be used in

evaluating disability claims.  20 C.F.R. §§ 404.1520, 416.920; see, e.g., Barnhart v. Thomas, 540

U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003); Bowen v. Yuckert, 482 U.S. 137, 140, 107 S. Ct.

2287, 2291 (1987).  The Supreme Court has articulated the five steps as follows:

> Acting pursuant to its statutory rulemaking authority, the agency has promulgated regulations establishing a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or nondisability can be made, the SSA will not review the claim further.  [1] At the first step, the agency will find nondisability unless the claimant shows that he is not working at a "substantial gainful activity."  [2] At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  [3] At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies.  [4] If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled.  [5] If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.

Barnhart v. Thomas, 540 U.S. at 24-25, 124 S. Ct. at 379-80 (fns. & citations omitted).[20]

      The claimant bears the burden of proof as to the first four steps; if the claimant meets

the burden of proving that he cannot return to his past work, thereby establishing a prima facie case,

the Commissioner then has the burden of proving the last step, that there is other work the claimant

---

[20]    Accord, e.g., Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012); Rosa v. Callahan, 168 F.3d at 77; Tejada v. Apfel, 167 F.3d at 774; see also, e.g., Jasinski v. Barnhart, 341 F.3d at 183-84; Shaw v. Chater, 221 F.3d at 132; Brown v. Apfel, 174 F.3d at 62; Balsamo v. Chater, 142 F.3d 75, 79-80 (2d Cir. 1998); Perez v. Chater, 77 F.3d at 46; Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir. 1995); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

can perform considering not only his medical capacity but also his age, education and training.  See, e.g., Barnhart v. Thomas, 540 U.S. at 25, 124 S. Ct. at 379-80.[21/]

**C.    The Treating Physician Rule**

The "treating physician's rule" is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion. Specifically, the Commissioner's regulations provide that:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2); see, e.g., Rugless v. Comm'r of Soc. Sec., 548 F. App'x 698, 699-700 (2d Cir. 2013); Meadors v. Astrue, 370 F. App'x 179, 182 (2d Cir. 2010); Colling v. Barnhart, 254 F. App'x 87, 89 (2d Cir. 2007); Lamorey v. Barnhart, 158 F. App'x 361, 362 (2d Cir. 2006).

Further, the regulations specify that when controlling weight is not given a treating physician's opinion (because it is not "well-supported" by other medical evidence), the ALJ must consider the following factors in determining the weight to be given such an opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence that supports the treating physician's report; (4) how consistent the treating physician's opinion is with the record as a whole; (5) the specialization of the physician in contrast to the condition being treated; and (6) any other factors which may be significant.  20 C.F.R. § 404.1527(c)(2)-(6); see, e.g., Cichocki v. Astrue, 534 F. App'x 71, 74 (2d

---

[21/]    See also, e.g., Selian v. Astrue, 708 F.3d at 418; Betances v. Comm'r of Soc. Sec., 206 F. App'x 25, 26 (2d Cir. 2006); Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003); Rosa v. Callahan, 168 F.3d at 80; Perez v. Chater, 77 F.3d at 46; Berry v. Schweiker, 675 F.2d at 467.

Cir. 2013); <u>Gunter</u> v. <u>Comm'r of Soc. Sec.</u>, 361 F. App'x 197, 197 (2d Cir. 2010).[22/]

When a treating physician provides a favorable report, the claimant "is entitled to an express recognition from the [ALJ or] Appeals Council of the existence of [the treating physician's] favorable . . . report and, if the [ALJ or] Council does not credit the findings of that report, to an explanation of why it does not." <u>Snell</u> v. <u>Apfel</u>, 177 F.3d 128, 134 (2d Cir. 1999); <u>see</u>, <u>e.g.</u>, <u>Cichocki</u> v. <u>Astrue</u>, 534 F. App'x at 75; <u>Zabala</u> v. <u>Astrue</u>, 595 F.3d 402, 409 (2d Cir. 2010) (ALJ's failure to consider favorable treating physician evidence ordinarily requires remand pursuant to <u>Snell</u> but does not require remand where the report was "essentially duplicative of evidence considered by the ALJ"); <u>Ferraris</u> v. <u>Heckler</u>, 728 F.2d 582, 587 (2d Cir. 1984) ("We of course do not suggest that every conflict in a record be reconciled by the ALJ or the Secretary, but we do believe that the crucial factors in any determination must be set forth with sufficient specificity to enable [reviewing courts] to decide whether the determination is supported by substantial evidence." (citations omitted)); <u>Ramos</u> v. <u>Barnhart</u>, 02 Civ. 3127, 2003 WL 21032012 at *7, *9 (S.D.N.Y. May 6, 2003) (The ALJ's "'failure to mention such [treating physician report] evidence and set forth the reasons for his conclusions with sufficient specificity hinders [this Court's] ability . . . to decide whether his determination is supported by substantial evidence.'").

The Commissioner's "treating physician" regulations were approved by the Second Circuit in <u>Schisler</u> v. <u>Sullivan</u>, 3 F.3d 563, 568 (2d Cir. 1993).

## II.    ALJ NOONAN SUFFICIENTLY DEVELOPED THE RECORD

Duran argues that ALJ Noonan failed to sufficiently develop the record because he

---

[22/]   See also, <u>e.g.</u>, <u>Foxman</u> v. <u>Barnhart</u>, 157 F. App'x 344, 346-47 (2d Cir. 2005); <u>Halloran</u> v. <u>Barnhart</u>, 362 F.3d 28, 32 (2d Cir. 2004); <u>Shaw</u> v. <u>Chater</u>, 221 F.3d 126, 134 (2d Cir. 2000); <u>Clark</u> v. <u>Comm'r of Soc. Sec.</u>, 143 F.3d 115, 118 (2d Cir. 1998); <u>Schaal</u> v. <u>Apfel</u>, 134 F.3d 496, 503 (2d Cir. 1998).

"made no meaningful effort to obtain clarifying data and opinion[s] from the treating neurologist and other treating doctors who certainly were in the best position to provide clear assessments regarding the Plaintiff's motivations, strengths, and vulnerabilities." (Dkt. No. 20: Duran Br. at 7; see also id. at 5-10; Dkt. No. 23: Duran Reply Br. at 5.)

Because legal error would warrant remand, Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999), the Court will address the correctness of the legal standards applied first.

ALJ Noonan's conclusion that Duran has the residual functional capacity ("RFC") to meet the demands of light work was based on the medical records, including three years of treatment notes from Duran's treating physician and treating neurologist, a visit to a medical expert, the opinions of two consultative physicians, one visit to a physician to whom Duran was referred by Dr. Fajardo and Duran's testimony. (See pages 10-11.) "'[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a "complete medical history," the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.'" Swiantek v. Comm'r of Soc. Sec., 588 F. App'x 82, 84 (2d Cir. 2015) (quoting Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citing Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996))).[23/] A contrary opinion from a treating physician does not create an obvious gap in the record, triggering the ALJ's obligation to seek clarifying information. See, e.g., Petti v. Colvin, No. 13-CV-267, 2014 WL 6783703 at *13 (E.D.N.Y. Dec. 2, 2014) (The ALJ "considered a complete medical record without

---

[23/]    See also, e.g., Ramos v. Comm'r of Soc. Sec., 13 Civ. 6561, 2015 WL 708546 at *18 (S.D.N.Y. Feb. 4, 2015) (ALJ had no further obligation to develop the record where the medical record from the treating clinic was "extensive, including more than two years of consistent treatment notes."); Matos v. Colvin, 13 Civ. 4525, 2014 WL 3746501 at *9 (S.D.N.Y. July 30, 2014) (ALJ properly fulfilled duty to develop the record where he questioned claimant thoroughly, solicited testimony from medical and vocational experts and admitted voluminous submissions from physicians.).

clear or obvious gaps.  Therefore, the ALJ was not required to seek out additional information and could ascribe limited weight to [the treating physician's] opinion . . . ."); Bell v. Colvin, No. 12-CV-1527, 2013 WL 6283834 at *3 (N.D.N.Y. Dec. 4, 2013) (The ALJ "had before him [claimant's] treatment records, objective medical evidence, including x-rays and MRIs, and [a treating physician's] opinion that [the claimant] could perform sedentary work. . . .  The court is satisfied that further development of the record was unnecessary as the ALJ had before him substantial evidence that enabled him to render a decision."); Oliphant v. Astrue, No. 11-CV-2431, 2012 WL 3541820 at *20 (E.D.N.Y. Aug. 14, 2012) ("The ALJ subpoenaed comprehensive medical records from . . . all known treating physicians and compiled a voluminous record . . . . There was no 'gap' in the record; rather, there was an absence of evidence of neurological deficits. . . . Consequently, the ALJ was not required to seek additional information.").

Accordingly, the Court finds that ALJ Noonan properly developed the record.

## III.   APPLICATION OF THE FIVE STEP SEQUENCE

### A.   Duran Was Not Engaged In Substantial Gainful Activity

The first inquiry is whether Duran was engaged in substantial gainful activity after her application for SSI benefits.  "Substantial gainful activity" is defined as work that involves "doing significant and productive physical or mental duties" and "[i]s done (or intended) for pay or profit."  20 C.F.R. § 404.1510.  ALJ Noonan's conclusion that Duran did not engage in substantial gainful activity during the applicable time period (see page 10 above) is not disputed by Duran or the Commissioner.  (See generally Dkt. No. 20: Duran Br.; Dkt. No. 22: Gov't Br.)  The Court therefore proceeds with the analysis.

**B.      Duran Demonstrated "Severe" Impairments That Significantly Limited Her Ability To Do Basic Work Functions**

The second step of the analysis is to determine whether Duran proved that she had a severe impairment or combination of impairments that "significantly limit[ed her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). "Basic work activities" include:

> walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . seeing, hearing, and speaking . . . [u]nderstanding, carrying out, and remembering simple instructions . . . [u]se of judgment . . . [r]esponding appropriately to supervision, co-workers and usual work situations . . . [d]ealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b)(1)-(6).

ALJ Noonan determined that Duran had the following severe impairments: Arnold-Chiari malformation, disorder of the cervical spine, hypertension and asthma. (See page 10 above.) Because Duran, who is represented by counsel, does not challenge ALJ Noonan's finding regarding the severity of Duran's impairments (see Dkt. No. 20: Duran Br.; Dkt. No. 23: Duran Reply Br.), the Court proceeds to the third step of the five-step analysis.

**C.      Duran Did Not Have A Disability Listed In Appendix 1 Of The Regulations**

The third step of the five-step test requires a determination of whether Duran had an impairment listed in Appendix 1 of the Regulations. 20 C.F.R., Pt. 404, Subpt. P, App. 1. "These are impairments acknowledged by the [Commissioner] to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the 'listed' impairments, he or she is conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir. 1995).

ALJ Noonan found that notwithstanding Duran's multiple severe impairments, she "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 [and] 404.1526 . . .)."  (R. 22.)

Duran, represented by counsel, does not argue that any of her impairments meet or equal a Listed condition.  (See generally Dkt. No. 20: Duran Br.; Dkt. No. 23: Duran Reply Br.)  The Court therefore proceeds with the analysis.

**D.**     **Residual Functional Capacity ("RFC") and Credibility Determinations**

     **1.**     **Credibility Analysis**

Because subjective symptoms only lessen a claimant's RFC where the symptoms "'can reasonably be accepted as consistent with the objective medical evidence and other evidence,' the ALJ is not required to accept allegations regarding the extent of symptoms that are inconsistent with the claimant's statements or similar evidence." Moulding v. Astrue, 08 Civ. 9824, 2009 WL 3241397 at *7 (S.D.N.Y. Oct. 8, 2009) (citation & emphasis omitted); see, e.g., Campbell v. Astrue, 465 F. App'x 4, 7 (2d Cir. 2012) ("As for the ALJ's credibility determination, while an ALJ 'is required to take the claimant's reports of pain and other limitations into account,' he or she is 'not require[d] to accept the claimant's subjective complaints without question.'  Rather, the ALJ 'may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.'" (citations omitted)); Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) ("When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." (citations omitted)); Brown v. Comm'r of Soc. Sec., 310

F. App'x 450, 451 (2d Cir. 2009) (""Where there is conflicting evidence about a claimant's pain, the ALJ must make credibility findings.'")[24/]  In addition, "courts must show special deference to an ALJ's credibility determinations because the ALJ had the opportunity to observe plaintiff's demeanor while [the plaintiff was] testifying."  Marquez v. Colvin, 12 Civ. 6819, 2013 WL 5568718 at *7 (S.D.N.Y. Oct. 9, 2013).[25/]

When ruling that a claimant is not entirely credible, the ALJ must provide "specific reasons for the finding on credibility, supported by the evidence in the case record."  SSR 96-7p, 1996 WL 374186 at *4 (July 2, 1996).  The regulations set out a two-step process for assessing a

---

[24/]    See also, e.g., Rivers v. Astrue, 280 F. App'x 20, 22 (2d Cir. 2008) (same); Thompson v. Barnhart, 75 F. App'x 842, 845 (2d Cir. 2003) (ALJ properly found that plaintiff's "description of her symptoms was at odds with her treatment history, her medication regime, and her daily routine"); Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999); Norman v. Astrue, 912 F. Supp. 2d 33, 85 (S.D.N.Y. 2012) ("It is 'within the discretion of the [Commissioner] to evaluate the credibility of plaintiff's complaints and render an independent judgment in light of the medical findings and other evidence regarding the true extent of such symptomatology.'"); Astolos v. Astrue, No. 06-CV-678, 2009 WL 3333234 at *12 (W.D.N.Y. Oct. 14, 2009) (ALJ properly determined that plaintiff's subjective pain complaints were not supported by the medical record); Speruggia v. Astrue, No. 05-CV-3532, 2008 WL 818004 at *11 (E.D.N.Y. Mar. 26, 2008) ("The ALJ 'does not have to accept plaintiff's subjective testimony about her symptoms without question' and should determine a plaintiff's credibility 'in light of all the evidence.'"); Soto v. Barnhart, 01 Civ. 7905, 2002 WL 31729500 at *6 (S.D.N.Y. Dec. 4, 2002) ("The ALJ has the capacity and the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of pain alleged by the claimant."); Brandon v. Bowen, 666 F. Supp. 604, 608 (S.D.N.Y. 1987) (same).

[25/]    Accord, e.g., Campbell v. Astrue, 465 F. App'x at 7 ("[W]e have long held that '[i]t is the function of the [Commissioner], not ourselves, . . . to appraise the credibility of witnesses, including the claimant.'"); Nunez v. Astrue, 11 Civ. 8711, 2013 WL 3753421 at *7 (S.D.N.Y. July 17, 2013); Guzman v. Astrue, 09 Civ. 3928, 2011 WL 666194 at *7 (S.D.N.Y. Feb. 4, 2011); Ruiz v. Barnhart, 03 Civ. 10128, 2006 WL 1273832 at *7 (S.D.N.Y. May 10, 2006); Gernavage v. Shalala, 882 F. Supp. 1413, 1419 & n.6 (S.D.N.Y. 1995); Mejias v. Soc. Sec. Admin., 445 F. Supp. 741, 744 (S.D.N.Y. 1978) (Weinfeld, D.J.); Wrennick v. Sec'y of Health, Educ. & Welfare, 441 F. Supp. 482, 485 (S.D.N.Y. 1977) (Weinfeld D.J.).

claimant's statements about pain and other limitations:

> At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. . . . If the claimant does suffer from such an impairment, at the second step, the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record. The ALJ must consider statements the claimant or others make about his impairment(s), his restrictions, his daily activities, his efforts to work, or any other relevant statements he makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony in its administrative proceedings.

Genier v. Astrue, 606 F.3d at 49 (quotations, citation & brackets omitted).[26/]

ALJ Noonan found that Duran's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" (R. 24), but her "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent that they are inconsistent with the [ALJ's] residual functional capacity assessment" (id.).[27/] Duran argues that

---

[26/] Accord, e.g., Cichocki v. Astrue, 534 F. App'x 71, 75-76 (2d Cir. 2013); Campbell v. Astrue, 465 F. App'x at 7; Meadors v. Astrue, 370 F. App'x 179, 183 (2d Cir. 2010); Taylor v. Barnhart, 83 F. App'x 347, 350-51 (2d Cir. 2003); 20 C.F.R. § 416.945(a)(1), (3); SSR 96-7p, 1996 WL 374186 at *2.

[27/] This Court, and others, previously have criticized ALJ decisions that "[d]etermin[e] the RFC first and then measur[e] the claimant's credibility by that yardstick," as "illogical" and "prejudicial to the claimant." Cruz v. Colvin, 12 Civ. 7346, 2013 WL 3333040 at *15-16 (S.D.N.Y. July 2, 2013) (Peck, M.J.) (& cases cited therein), report & rec. adopted, 2014 WL 774966 (S.D.N.Y. Feb. 21, 2014); see also, e.g., Soto v. Colvin 14 Civ. 7440, 2015 WL 1726541 at *22 (S.D.N.Y. Apr. 14, 2015) (Peck, M.J.); Hopkins v. Colvin, 13 Civ. 4803, 2014 WL 2526837 at *18 n.7 (S.D.N.Y. June 5, 2014) (Peck, M.J.), report & rec. adopted, 2014 WL 4392209 (S.D.N.Y. Sept. 5, 2014); Givens v. Colvin, 13 Civ. 4763, 2014 WL 1394965 at *10 n.18 (S.D.N.Y. Apr. 11, 2014) (Peck, M.J.); Paulino v. Colvin, 13 Civ. 3718, 2014 WL 2120544 at *17 n.18 (S.D.N.Y. May 13, 2014) (Peck, M.J.). Nevertheless, while ALJ Noonan's language leaves something to be desired, here unlike in Cruz, he gave sufficient explanation for finding Duran's claim of disabling Arnold-Chiari malformation, disorder of the cervical spine, hypertension, and asthma to lack credibility—including careful review of the contrary medical evidence and Duran's admissions that her activities of daily living largely have not been impacted by her medical impairments—that the Court

(continued...)

ALJ Noonan "failed to provide the required detailed credibility analysis utilizing all the criteria in SS 96-7p and Social Security Regulation 20 CFR Section 404.1529 with respect to all of Duran's symptomology, and failed to explain how Duran's daily activities translated into a capacity to perform sedentary work." (Dkt. No. 20: Duran Br. at 8.)

ALJ Noonan found that there was no evidence that Duran's impairments "render her unable to perform the demands of a wide range of exertionally light work." (R. 24.)  In drawing this conclusion, ALJ Noonan relied primarily Dr. Galst's opinion that Duran's impairments were not disabling, which the ALJ found consistent with "the overall pattern of medical evidence in the record." (See page 11 above.)  ALJ Noonan noted that Dr. Galst found that Duran could "frequently lift and carry up to ten pounds, sit for a total of eight-hours during an eight-hour workday, stand for a total of four hours during an eight-hour workday, and walk for a total of three hours during an eight-hour workday." (See page 11 above.)  "Dr. Galst also found that [Duran] has 'some mild limitation' [to] pushing, pulling and frequent overhead lifting; and that she has no limitation for fingering or handling." (See page 11 above.)  Dr. Galst noted that an MRI confirmed an Arnold-Chiari malformation but such formations are "often asymptomatic."  (See page 8 above.) Consultative physician Dr. Lathan similarly found that Duran's "severe impairments do not render her unable to work" (see page 11 above), and that she "has only 'moderate' restriction for bending, lifting, pushing, pulling, squatting, and walking" (see page 11 above).  Consultative physician Dr. Mescon also noted the presence of an Arnold-Chiari malformation but found that Duran has moderate limitations only on "her ability to climb, push, pull, or carry heavy objects." (See page

---

27/    (...continued)
concludes the ALJ's finding is supported by substantial evidence and a remand is not called for.  See, e.g., Soto v. Colvin, 2015 WL 1726541 at *24; Givens v. Colvin, 2014 WL 1394965 at *10 n.18; Paulino v. Colvin, 2014 WL 2120544 at *17 n.18.

11 above.)

Duran's own testimony contradicted her allegations that she is disabled.  Duran stated that her conditions do not affect her personal care.  (See page 2 above.)  Duran cares for her four children and prepares food daily.  (See page 2 above.)  Duran can go out alone and when she does, she walks or uses public transportation. (See page 2 above.)  Duran picks her children up from school, attends church twice a week and goes shopping for groceries and clothing once every two weeks. (See page 2 above.)  Moreover, her medical exams largely were normal.  (See pages 3-9 above.)

Thus, ALJ Noonan met his burden in finding Duran not entirely credible because the objective medical evidence and her stated independence in activities of daily living failed to support her claims of disability.  See, e.g., Hilliard v. Colvin, 13 Civ. 1942, 2013 WL 5863546 at *15 (S.D.N.Y. Oct. 21, 2013) (Peck, M.J.) (The "ALJ . . . met his burden in finding [plaintiff's] claims not entirely credible because she remains functional in terms of activities of daily living and the objective medical evidence fails to support her claims of total disability based on pain." (citations omitted)); see also, e.g., Stanton v. Astrue, 370 F. App'x 231, 234 (2d Cir. 2010) (the court will not "second-guess the credibility finding . . .  where the ALJ identified specific record-based reasons for his ruling"); Rutkowski v. Astrue, 368 F. App'x 226, 230 (2d Cir. 2010) (ALJ adequately supported credibility finding when he noted that "substantial evidence existed showing that [plaintiff] was relatively 'mobile and functional,' and that [plaintiff's] allegations of disability contradicted the broader evidence");  Kessler v. Colvin, 13 Civ. 1760, 2014 WL 4651895 at *14 (S.D.N.Y. Sept. 17, 2014) (Claimant's "subjective complaints of pain lacked the necessary objective medical support, and therefore were not entitled to any special weight. Accordingly, the ALJ's adverse credibility determination was not erroneous."); Givens v. Colvin, 13 Civ. 4762, 2014 WL

1394965 at *10-11 (S.D.N.Y. Apr. 11, 2014) (Peck. M.J.) (ALJ properly found claimant's disability claims not entirely credible where claimant "admitted that he was capable of performing many day-to-day activities, such as reading, watching television, caring for his personal needs, using public transportation, and going to church."); Crayton v. Astrue, 944 F. Supp. 2d 231, 235 (W.D.N.Y. 2013) ("Plaintiff also challenges the ALJ's finding that plaintiff's complaints of disabling pain were not wholly credible . . . . Here, the ALJ rejected plaintiff's testimony based on several inconsistencies . . . . [P]laintiff's complaints of disabling pain appear to conflict with her medical treatment records, which reflect few complaints and no aggressive or additional treatment for back, knee and wrist pain . . . .  For example, plaintiff listed, among her activities of daily living, dressing and caring for herself, performing light housework and grocery shopping, and stated that she could lift ten pounds. . . .  Given the inconsistencies between plaintiff's reports of disabling pain, other testimony by plaintiff and the rest of the record, I find no basis to disturb the ALJ's findings as to plaintiff's credibility."); Ashby v. Astrue, 11 Civ. 2010, 2012 WL 2477595 at *15 (S.D.N.Y. Mar. 27, 2012) ("in making his credibility assessment, the ALJ appropriately considered Plaintiff's ability to engage in certain daily activities as one factor, among others suggested by the regulations"), report & rec. adopted, 2012 WL 2367034 (S.D.N.Y. June 20, 2012).

## 2.    Residual Functional Capacity Determination

ALJ Noonan determined that Duran "has the residual functional capacity to perform light work . . . not requiring exposure to dusts, fumes, or other pulmonary irritants." (R. 23; see page 10 above.)  20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b) define light work as:

> Work [that] involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.157(b); 20 C.F.R. § 416.967(b).

ALJ Noonan reached a determination as to Duran's RFC after finding that "the overall pattern of medical evidence in the record supports a finding that [Duran's] impairments are not disabling." (See page 11 above.)  In reaching this conclusion, ALJ Noonan gave "little weight to [treating physician] Dr. Balmaceda's assessment since it is contrary to the weight of the evidence, including her only treatment notes." (R. 25.)  The treatment notes of Duran's other treating physicians, and the consultative physicians and medical experts, contradict Dr. Balmaceda's finding of disability.  Duran's treating physicians, Dr. Fajardo and Dr. Balmaceda, performed general examinations at each of Duran's appointments, the results of which generally were normal. (See pages 3-8 above.)  Dr. Lathan found that Duran's "severe impairments do not render her unable to work" and that she "has only 'moderate' restriction for bending, lifting, pushing, pulling, squatting, and walking." (See page 11 above.)  Consultative physician Dr. Mescon's finding that Duran has moderate limitations only on "her ability to climb, push, pull, or carry heavy objects" also supports the ALJ's determination. (See page 11 above.)  In reviewing the evidence, Dr. Galst found that Duran could "frequently lift and carry up to ten pounds, sit for a total of eight-hours during an eight-hour workday, stand for a total of four hours during an eight-hour workday, and walk for a total of three hours during an eight-hour workday." (See page 11 above.)  "Dr. Galst also found that [Duran] has 'some mild limitation' [to] pushing, pulling and frequent overhead lifting; and that she has no limitation for fingering or handling." (See page 11 above.)

It is well-settled that a consulting physician's opinion can constitute substantial evidence supporting an ALJ's conclusions. See, e.g., Rosier v. Colvin, 586 F. App'x 756, 758 (2d Cir. 2014) (substantial evidence supporting ALJ's conclusion that a treating physician's opinion should not be given controlling weight included evaluations by a consultative examiner); Diaz v.

Shalala, 59 F.3d 307, 315 (2d Cir. 1995) ("The opinions of three examining physicians, plaintiff's

own testimony, and the medical tests together constitute substantial evidence adequately supporting

the [Commissioner's] conclusion that the plaintiff's injuries did not prevent her from resuming her

job as a sewing machine operator."); Fuentes v. Colvin, No. 13-CV-6201, 2015 WL 631969 at *8

(W.D.N.Y. Feb. 13, 2015) ("'The opinion of a consultative examiner can constitute substantial

evidence supporting an ALJ's decision.'"); Frawley v. Colvin, No. 13-CV-1567, 2014 WL 6810661

at *9 (N.D.N.Y. Dec. 2, 2014) ("The opinions of consultative examiners . . . may constitute

substantial evidence where, as here, [they are] supported by the medical evidence in the record.");

Leisten v. Colvin, No. 12-CV-6698, 2014 WL 4275720 at *14 (W.D.N.Y. Aug. 28, 2014).  Here,

the ALJ relied primarily on the opinion of medical expert Dr. Galst that Duran's impairments were

not disabling, because it was consistent with "the overall pattern of medical evidence in the record."

(See page 11 above.)

Moreover, an ALJ may give greater weight to a consultative examiner's opinion than

a treating physician's opinion if the consultative examiner's conclusions are more consistent with

the underlying medical evidence.  See, e.g., Rosier v. Colvin, 586 F. App'x at 758 (ALJ properly

relied on evaluations by a consultative examiner to reject treating physician's opinion where other

substantial evidence in the record was inconsistent with treating physician's opinion); Rivera v.

Colvin, 13 Civ. 7150, 2015 WL 1027163 at *16 (S.D.N.Y. Mar. 9, 2015) ("It is not per se legal error

for an ALJ to give greater weight to a consulting opinion than a treating opinion."); Frawley v.

Colvin, 2014 WL 6810661 at *5-7, *9-10 (ALJ's decision to give great weight to the opinion of a

consultative psychological examiner was supported by substantial evidence because the opinion was

consistent with the same medical evidence relied on by the ALJ to reject the treating psychologist's

opinion); Manning v. Colvin, No. 13-CV-497, 2014 WL 5308189 at *8-9 (W.D.N.Y. Oct. 16, 2014)

(ALJ properly gave little weight to the treating physician's opinion and "'great weight'" to the consultative examiner's prognosis because the consultative examiner's opinion was more consistent with the medical evidence of record); Leisten v. Colvin, 2014 WL 4275720 at *12-15 (ALJ did not err by affording treating doctor's opinions little weight and giving consultative examiners' opinions substantial weight because the treating doctor's opinion was inconsistent and unsupported while consultative examiners' opinions were supported by their examination results).  "Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, the opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (citation omitted).[28/] ALJ Noonan's determination that Dr. Balmaceda's October 11, 2011 opinion was entitled to little weight is supported by substantial evidence.  (See page 27 above.)

Because Dr. Galst's opinion could constitute substantial evidence and was more

---

[28/]    Accord, e.g., Penfield v. Colvin, 563 F. App'x 839, 840 (2d Cir. 2014); Petrie v. Astrue, 412 F. App'x 401, 405 (2d Cir. 2011); Kennedy v. Astrue, 343 F. App'x 719, 721 (2d Cir. 2009); Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) ("While the opinions of a treating physician deserve special respect, they need not be given controlling weight where they are contradicted by other substantial evidence in the record." (citations omitted)); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) ("When other substantial evidence in the record conflicts with the treating physician's opinion, however, that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given."); Torres v. Colvin, 12 Civ. 6527, 2014 WL 4467805 at *7 (S.D.N.Y. Sept. 8, 2014) ("'[T]he less consistent an opinion is with the record as a whole, the less weight it is to be given.'"); Jimenez v. Astrue, 12 Civ. 3477, 2013 WL 4400533 at *10 (S.D.N.Y. Aug. 14, 2013) ("'[T]he opinions of a treating physician 'need not be given controlling weight where they are contradicted by other substantial evidence in the record.'"); Van Dien v. Barnhart, 04 Civ. 7259, 2006 WL 785281 at *9 (S.D.N.Y. Mar. 24, 2006) ("'[The] general rule of deference does not apply where 'the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts.'").

consistent with the record as a whole than Dr. Balmaceda's October 2011 opinion, ALJ Noonan did not err in assigning it great weight.  Dr. Balmaceda's October 10, 2011 opinion was inconsistent with the record as a whole and Dr. Balmaceda's own treatment notes.  During each exam from February 2011 to January 2012, Dr. Balmaceda performed general and neurological exams, the results of which were unremarkable.  (See pages 5-7 above.)  Accordingly, it was appropriate for ALJ Noonan to assign Dr. Balmaceda's opinion little weight, and rely on the consistent findings of the other treating and consultative physicians.

In making an RFC determination, ALJ Noonan also considered Duran's testimony during the administrative hearing and her statements on her disability function report, which further contradict her claim of disability.  Duran stated that her conditions do not affect her personal care.  (See pages 2, 25 above.)  Duran prepares food daily.  (See pages 2, 25 above.)  Duran goes out alone and when she does, she walks or uses public transportation.  (See page 2, 25 above.)  Duran picks her children up from school.  (See pages 2, 25 above.)  Duran attends church twice a week and goes shopping for groceries and clothing once every two weeks.  (See pages 2, 25 above.)

Accordingly, the Court finds that ALJ Noonan's assessment that Duran had the capacity to perform light work with certain limitations caused by her asthma–i.e. that she can perform "light work . . . not requiring exposure to dusts, fumes, or other pulmonary irritants" (R. 23)–is supported by substantial evidence.  See, e.g., Sizer v. Colvin, 592 F. App'x 46, 47 (2d Cir. 2015) (RFC determination "based on the medical opinion evidence, the objective medical evidence, and [claimant's] testimony at the ALJ hearing" was supported by substantial evidence).

### E.   Duran Did Not Have The Ability To Perform Her Past Relevant Work

The fourth step of the five-step analysis asks whether Duran had the RFC to perform her past relevant work.  (See page 15 above.)  ALJ Noonan found that Duran did not.  (See page 11

above.)  Because neither Duran nor the Commissioner challenge this determination (see generally

Dkt. No. 20: Duran Br.; Dkt. No. 22: Gov't Br.), the Court proceeds to the final step of the five-step

sequential analysis.

### F.      There Are Jobs In Substantial Numbers In The Economy That Duran Can Perform

In the fifth step, the burden shifts to the Commissioner, "who must produce evidence

to show the existence of alternative substantial gainful work which exists in the national economy

and which the claimant could perform, considering not only his physical capability, but as well his

age, his education, his experience and his training."  Parker v. Harris, 626 F.2d 225, 231 (2d Cir.

1980).[29]

In meeting his burden under the fifth step, the Commissioner:

> may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404,
> Subpart P, App. 2, commonly referred to as "the Grid".  The Grid takes into account
> the claimant's residual functional capacity in conjunction with the claimant's age,
> education and work experience.  Based on these factors, the Grid indicates whether
> the claimant can engage in any other substantial gainful work which exists in the
> national economy.  Generally the result listed in the Grid is dispositive on the issue
> of disability.

Zorilla v. Chater, 915 F. Supp. 662, 667 (S.D.N.Y. 1996) (fn. omitted); see, e.g., Heckler v.

Campbell, 461 U.S. 458, 461-62, 465-68, 103 S. Ct. 1952, 1954-55, 1956-58 (1983) (upholding the

promulgation of the Grid); Roma v. Astrue, 468 F. App'x at 20-21; Martin v. Astrue, 337 F. App'x

87, 90 (2d Cir. 2009); Rosa v. Callahan, 168 F.3d at 78; Perez v. Chater, 77 F.3d 41, 46 (2d Cir.

1996); Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986).

---

[29]     See, e.g., Roma v. Astrue, 468 F. App'x 16, 20 (2d Cir. 2012); Arruda v. Comm'r of Soc.
Sec., 363 F. App'x 93, 95 (2d Cir. 2010); Butts v. Barnhart, 388 F.3d 377, 381 (2d Cir.
2004), amended on other grounds, 416 F.3d 101 (2d Cir. 2005); Rosa v. Callahan, 168 F.3d
72, 77 (2d Cir. 1999).

ALJ Noonan found that "considering [Duran's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Duran] can perform."  (See pages 11-12 above.)

20 C.F.R., Pt. 404, Subpt. P, App. 2, 200.00(a). states: "where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled."  Under 20 C.F.R., Pt. 404, Subpt. P, App. 2, Duran is a younger individual as she is between the ages of eighteen and forty-four, illiterate or unable to communicate in English and has unskilled work experience.  Because Duran has "the residual functional capacity to perform the full range of light work, considering the claimant's age, education, and work experience, a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.16."  (R. 26.)  The ALJ's conclusion that Duran is not disabled is consistent with the rule.

## CONCLUSION

For the reasons discussed  above, the Commissioner's determination that Duran was not disabled within the meaning of the Social Security Act is supported by substantial evidence.  The Commissioner's motion for judgment on the pleadings (Dkt. No. 21) is GRANTED and

33

Duran's motion for judgment on the pleadings (Dkt. No. 19) is <u>DENIED</u>. The Clerk of Court shall

close the case.

SO ORDERED.

Dated:      New York, New York
            July 22, 2015

**Andrew J. Peck**
United States Magistrate Judge

Copies ECF to:      All Counsel